UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | DOCKET NO. 3:01 CR 00205 (SFU) |
| Plaintiff, | : | |
| VS. | : | |
| GARY FALCETTA, | : | |
| Defendant. | : | SEPTEMBER 12, 2005 |

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant, Gary Falcetta, respectfully submits this memorandum in anticipation of his re-sentencing on a single drug conspiracy charge, which currently is scheduled for September 15, 2005, at 10:00 a.m.

At his original sentencing on December 9, 2003, Mr. Falcetta stood before this Court and offered, in addition to full acceptance of responsibility for his actions, a promise: that, whatever his prison sentence, he would "stay[] in the right path" and would "come out better" so that he could come home to his wife and their two young daughters as quickly as possible. Indeed, at the time, Mr. Falcetta already had begun his effort to turn his life around, attempting to rehabilitate himself while in pre-sentence detention by working hard, taking classes, and counseling young people against criminal behavior.

Although the Court at the time recognized the devastating impact that Mr. Falcetta's lengthy incarceration would have on his family, the Court stated that these family circumstances were not sufficiently extraordinary under the then-binding Sentencing Guidelines to warrant downward departure from the Guidelines range of 70-87 months. Accordingly, while noting that it

would have preferred to have more flexibility in determining an appropriate penalty, the Court sentenced Mr. Falcetta to a 70-month prison term.

Since his sentencing date, Mr. Falcetta has fully lived up to the promise he made to this Court. While in prison, he has taken educational courses; participated in substance abuse programs; and impressed his supervisors with his desire to redeem himself. Indeed, Mr. Falcetta hopes shortly to enter a drug treatment program that will further facilitate his re-entry into society and his return to his family. In the meantime, since the United States Supreme Court's decision in United States v. Booker, 125 S. Ct 738 (2005) and the Second Circuit's subsequent opinion in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), this Court now has discretion – indeed, is required – to consider Mr. Falcetta's personal characteristics, such as his family circumstances and his efforts at rehabilitation, in determining his sentence. As detailed below, these personal characteristics militate strongly in favor of a reduced, non-Guidelines sentence.

I.   BACKGROUND INFORMATION

A.   *History of The Case.*

Mr. Falcetta pleaded guilty in November 2001 to a single count of conspiracy to possess with intent to distribute heroin. In December 2003, Mr. Falcetta was sentenced to 70 months' incarceration, based on a Sentencing Guidelines offense level of 27.[1] In imposing sentence, the

---

[1] The mandatory minimum for the drug offense to which Mr. Falcetta pleaded guilty was 5 years. See 21 U.S.C. § 841(b)(1)(B). Mr. Falcetta initially had hoped that the Government would file a motion for substantial assistance under U.S.S.G § 5K1.1, which would have allowed the Court to impose a sentence below this statutory minimum. See 18 U.S.C. § 3553(e) (authorizing courts to depart below mandatory minimum on receipt of a Government motion for substantial assistance). However, at the trial of his co-defendant Andre Osorio, Mr. Falcetta offered testimony that tended to exculpate Mr. Osorio and that was inconsistent with his prior statements to the

2

Court rejected Mr. Falcetta's request for a downward departure based on his family responsibilities in caring for his two daughters, who were 2 and 5 at the time.[2] The Court stated at the time:

> I agree with your lawyer that I would prefer a system in which I was not bound as I am bound by the Federal Sentencing Guidelines. And, frankly, I think I can do a better job than a book of rules and regulations at looking somebody in the eye and evaluating the seriousness of their conduct and making a decision. But that's not the system we're in. The system we're in is one where the Sentencing Guidelines control except in those extraordinary circumstances, those rare circumstances where a departure is warranted . . . .

(Tr. at 52-53.)

---

Government. As a result, the Government declined to submit a § 5K1.1 motion, meaning that the Court had no authority to depart below the mandatory minimum. The Government also requested, and the Court granted, a 2-level increase for obstruction of justice.

    At the time, the Court noted that Mr. Falcetta had acted under some perceived coercion to help his co-defendant, and that "this is not a situation where [Mr. Falcetta] sought to minimize his conduct . . . . [or] to avoid responsibility for any aspect of what it is that he did, and his obstructive conduct was aimed at assisting a friend in avoiding a similar fate and I think that is the extremely rare case." (See December 9, 2003 Sentencing Transcript ("Tr.") at 33-34, attached as Exhibit 1.) Indeed, the Court granted Mr. Falcetta a three-level adjustment for acceptance of responsibility. (Tr. at 34.)

    Notably, all of Mr. Falcetta's co-conspirators in this case received dramatically lower sentences. Alex Cole, who instigated the conspiracy, was sentenced to 18 months' imprisonment; Travis Wright, who negotiated the attempted drug deal with undercover DEA agents, received a 22-month sentence; Shaun Evans and Rigoberto Rendon, both identified as sources for the drugs, were sentenced to time served; Andre Osorio received probation. (See attached Group Exhibit 2.)

    [2] Mr. Falcetta, who was born in Ecuador, also sought a downward departure based on his belief that he was subject to deportation. (See Tr. 41-43.) Following Mr. Falcetta's sentencing, he learned that he had automatically acquired citizenship in January 1994 pursuant to then-current U.S. immigration law. (See August 3, 2004 Department of Justice memorandum regarding Mr. Falcetta's immigration status, a copy of which is attached as Exhibit 3.)

3

Just prior to the imposition of sentence, Mr. Falcetta made a lengthy statement to the Court. In it, he repeatedly emphasized his desire to make changes for the better both in his own life, and for his family and others:

> I don't want that cycle in my life being forwarded to my kids. I didn't grow up with a father and I don't want my kids growing up without a father, you know . . . .I talk to the kids in jail. When I was in prison in Wyatt I talk to the kids, telling them not to get into the bad ways of life. You know, I do a Project Aware thing with the kids so I can tell them not to come in, not even to listen to your friends but to listen to your gut instinct which is to do the right thing . . . . If I do get sentenced to five years, ten months, or 87 months, whatever, whatever you sentence me to, you know . . . I'm not going to come out worse, I'll come out better.

(Tr. at 46-49.)

**B.     *Mr. Falcetta's Conduct While Incarcerated.***

Since being incarcerated, Mr. Falcetta has lived up to the promise he made to "come out better" from his experience. His prison reports indicate that Mr. Falcetta has maintained a good record. For example, a Program Review report dated August 25, 2004, noted that "Falcetta has maintained clear conduct" in prison and that he was "enrolled in and making satisfactory progress towards the completion of" a number of academic classes. (See August 25, 2004 Program Review report, attached as Exhibit 4.) Mr. Falcetta also successfully completed an eight-week Substance Abuse Awareness and Anger Management program. (See program certificate attached as Exhibit 5.)

Indeed, even before his sentencing, Mr. Falcetta worked hard to rehabilitate himself. According to a letter submitted by his case manager, during his pre-sentencing detention at the Donald W. Wyatt Detention Facility, Mr. Falcetta regularly attended church services; participated in Project Aware as a speaker; and received good evaluations for his work in the Inmate Workers

4

Program, where he served as a facility barber. (See letter of James M. O'Gara, attached as Exhibit 6.)

Mr. Falcetta's former employer at the Wyatt facility underscored the effort that Mr. Falcetta made from the very beginning of his pre-sentence incarceration to turn his life around:

> Mr. Falcetta [was] in my employ for approximately one year at the Donald W. Wyatt facility. During this period I became well acquainted with him. I've found him to be both a diligent and conscientious worker. . . . But what I've found that distinguishes and impresses me about this young man from the many inmates I've known is the sincere contrition he exudes for what he's done to cause himself and his family such anguish. He speaks constantly about making amends to his family and to his business aspiration to one day own his own barber shop.

(See June 25, 2005 Letter of Norm Demers, attached as Exhibit 7.)

C.   *The Residential Drug Abuse Treatment Program.*

In addition to all of the activities and efforts described above, Mr. Falcetta has applied to participate in a Residential Drug Abuse Treatment Program. If he is granted admission into the program, which is scheduled to begin in mid-October 2005, Mr. Falcetta will undergo an approximately 9-month residential program, followed by up to six months of community transition. According to the Bureau of Prisons, RDAP offers inmates intensive counseling designed not only to address substance abuse, but to provide the tools for a successful life after prison:

> In RDAP, inmates are engaged in group counseling for 3-4 hours per day over a 9 month period. Treatment is delivered by drug abuse treatment specialists, who are supervised by a drug abuse program psychologist.
> RDAP participants live together in a housing unit separate from the general population. The cognitive-behavioral program includes components to break down criminal thinking, build rational thinking, improve relationships and interpersonal

5

skills, and help inmates develop a strategy to maintain recovery and a crime-free lifestyle.

(See Bureau of Prison website, Substance Abuse Treatment FAQs, found at http://www.bop.gov/inmate_programs/substanceabuse_faqs.jsp, attached as Exhibit 8.)

Assuming he successfully completes RDAP, Mr. Falcetta may be entitled to release prior to his current release date of August 17, 2007. See 18 U.S.C. § 3621(e) (permitting early release in some circumstances for inmates who successfully complete RDAP).

### D.   *Mr. Falcetta's Post-Incarceration Plans.*

Once he returns home, although the task of rebuilding his life will be onerous, Mr. Falcetta has both the desire to do so and the strong incentive of a family that, while it has supported him unhesitatingly in the period since his incarceration, badly needs his presence in their lives.  His wife, Patricia, who is currently employed at New York University while taking classes there at night, has been raising their two young daughters on her own.  Mr. Falcetta's children, particularly his daughter, Vanessa, have been particularly hard hit by their father's incarceration.  Vanessa was held back from second grade and has required therapy to deal with the hardship and pain caused by the situation.

Mr. Falcetta's eventual return to his family will be a welcome relief to all of them.  As Patricia states in a letter to the Court:

> . . . Gary is a different person.  He is a better person now and is only asking for an opportunity to prove it to anyone who is willing to give him that chance.  Through my employer, Gary has the opportunity to attend classes (with my benefit of tuition remission) and better his future.  I know that this is what Gary wants and [he] is willing to do it so that his daughters can someday look up to him and not feel ashamed of the past.

6

(See Letter of Patricia Falcetta, attached as Exhibit 9.) (Letters from other friends and family members, attesting to Mr. Falcetta's efforts at rehabilitation since incarceration and his family's need for him, are attached as Group Exhibit 10.)

Perhaps the best expression of his desire to redeem himself comes directly from Mr. Falcetta. In a letter to the Court, he writes:

> I have a wife and two young daughters, age 5 and 8 years old who truly need a husband and father at home to support them financially and physiologically. I am absolutely committed to do both. During my time in prison I strongly feel I have matured and learned not only what I should do in life, but just as importantly – what I should not do. I will upon release, apply to New York University for a business degree and upon graduation open my own barbering business. I am fully aware this will take time and sacrifice simply because I'll have to attend evening courses so that I will have a full time job during the day so that I will be able to support my family. I am very serious when I state that I am not intimidated by these challenges. I welcome them. . . .
>
> Your Honor, I request with humility, for me to be resentenced and in return I promise you and all those who have had faith and believe in me, that I will be a hard-working productive member of society.

(See Letter of Gary Falcetta, attached as Exhibit 11.)

II.    ANALYSIS

When this Court first sentenced Mr. Falcetta in December 2003, it did so in the belief that the Court was constrained in its discretion by the United States Sentencing Guidelines to impose a sentence within the 70- to 87-month prescribed range. (See Tr. 52-53.) Under Booker and Crosby, of course, that long-held tenet is no longer valid: now, after determining the applicable Guidelines range, the Court is required to consider the factors enumerated in 18 U.S.C. § 3553(a)

7

in determining an appropriate sentence.  See Crosby, 397 F.3d at 111-13.  In this case, an analysis of the § 3553(a) factors counsels in favor of a reduced, non-Guidelines sentence for Mr. Falcetta.

Section 3553(a) sets forth a number of factors that affect a sentencing disposition.  Chief among these are "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense . . ."  Id.  The statute directs Courts to impose a sentence "sufficient, but not greater than necessary," to accomplish its intended purpose.  Id.

We respectfully submit that an analysis of these factors suggests a sentence more lenient than the 70-month prison term that Mr. Falcetta received.  As set forth above, Mr. Falcetta, a first-time drug offender, already has served a much longer term (approximately 37 months to date) than his co-conspirators, none of whose sentences exceeded 22 months.  While obviously Mr. Falcetta's actions in connection with his Government cooperation contributed to the situation in which he now finds himself, this discrepancy alone suggests that the 70-month sentence may have been "greater than necessary."

Mr. Falcetta's family ties and responsibilities also support a reduced, non-Guidelines sentence:  During his incarceration, his two young daughters have been deprived of their father's companionship and his wife has been deprived of both financial and psychological support as she strives to raise the children while holding down a full-time job and taking college courses.  As set forth above, his daughter was held back from school because she could not handle her father's incarceration, and has required therapy and psychological counseling to deal with the emotional toll.

8

But perhaps even more significant, since Mr. Falcetta's incarceration and even before his first sentencing, he has shown both a willingness and a capacity to change his behavior patterns and prepare himself for a productive return to society. Mr. Falcetta's efforts at rehabilitation, both prior to and since his original sentencing, certainly speak to his "history and characteristics," and weigh in favor of a reduced sentence.[3] See Crosby, 397 F.3d at 111-113; see also United States v. Jones, No. 99 Cr. 338-05 (RWS), 2003 U.S. Dist. LEXIS 1010 (E.D.N.Y. Jan. 27, 2003) (court relied on the defendant's efforts at rehabilitation since incarceration when imposing sentence). Accordingly, an examination of the § 3553(a)(1) factors supports Mr. Falcetta's request for a non-Guidelines sentence.

---

[3] Section 5K2.19 of the Sentencing Guidelines provides that "[p]ost-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing the defendant for that offense." U.S.S.G. § 5K2.19. Like many other provisions of the Sentencing Guidelines that prohibit judges from considering a defendant's personal characteristics, this policy statement "cannot be squared with the § 3553(a)(1) requirement that the court evaluate the 'history and characteristics' of the defendant . . .," and therefore should not preclude the Court from imposing a sentence outside the Guidelines range. See United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2004); see also United States v. Cherry, 366 F. Supp. 2d 372 (E.D. Va. 2005) (same); Simon v. United States, 361 F. Supp. 2d 35, 40 (E.D.N.Y. 2005) (same, and also noting that issues such as family ties and responsibilities are precisely "the sort of characteristics a court is likely to find relevant when determining 'the history and characteristics of the defendant' as required by § 3553(a)(1)").

In any event, § 5K2.19 has no bearing on Mr. Falcetta's pre-sentence efforts at rehabilitation, as demonstrated by, among other things, his participation in Project Aware.

9

## **CONCLUSION**

For the reasons set forth above, Mr. Falcetta respectfully requests that this Court (1) re-sentence him to a non-Guidelines sentence and (2) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
GARY FALCETTA


By _____
Michael P. Shea (ct 19598)
Jennifer L. Sachs (ct 20684)
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)
*mpshea@dbh.com*
*jlsachs@dbh.com*
His Attorneys

71302286.1 099984-00000
September 12, 2005 1:19 PM

## **CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing was sent this date via first class mail, postage prepaid, to Sandra Glover, Assistant United States Attorney, United States Attorney's Office, District of Connecticut, 157 Church Street, 23rd Floor, New Haven, CT  06510

      and via hand delivery and first-class mail, postage prepaid, to James Finnerty, Assistant United States Attorney, United States Attorney's Office, District of Connecticut, 915 Lafayette Blvd, Room 309, Bridgeport, CT 06604

_____
Jennifer L. Sachs

71302286.1 099984-00000
September 12, 2005 1:19 PM