```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
```

UNITED STATES OF AMERICA        :

      v.                        :        CRIMINAL NO. 3:01CR205(SRU)

GARY FALCETTA                   :        September 12, 2005

### GOVERNMENT'S SENTENCING MEMORANDUM

Gary Falcetta (the "defendant") repeatedly lied to the Government during interviews and, then, while under oath testifying at trial. His obstructive and perjurious conduct undermined the integrity of the administration of justice in this prosecution. It directly lead to a mistrial on one count and an acquittal on another count of a co-defendant.

The defendant now awaits sentencing after a remand pursuant to United States v. Booker, 125 S. Ct. 738 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Based on the nature of the defendant's offense, his leadership role in that offense, his efforts to obstruct justice after his guilty plea, his perjury while testifying at the trial of Andre Osorio, and the consequences of his conduct on the fair administration of justice and the integrity of the judicial process, the Government respectfully requests that the Court sentence the defendant to the same sentence as it originally imposed.

### I.   PRIOR SENTENCE

On November 9, 2001, Gary Falcetta (the "defendant") pleaded guilty before the Court to conspiring to possess with the intent to distribute and to distribute more than 100 grams of heroin in

violation of 21 U.S.C. §§ 846 and 841(a)(1). At that time, he executed a cooperation agreement with the Government.

At sentencing on December 9, 2003, the District Court sentenced the defendant to a term of imprisonment of 70 months. Because the defendant pleaded guilty to conspiring to possess with the intent to distribute and to distribute more than 100 grams of heroin, he was subject to a statutory mandatory minimum term of imprisonment of five years. Given his prior criminal history, the defendant did not meet the criteria established in 18 U.S.C. § 3553(f)(1)-(5) for a sentence reduction. Finally, given his post-plea conduct, the Government declined to file a motion pursuant to U.S.S.G. § 5K1.1.

**II.  THE UNDERLYING OFFENSE AND PRIOR PROCEEDINGS**

Between approximately May 2001 and August 9, 2001, the defendant and others conspired to distribute heroin. On August 9, 2001, law enforcement officers arrested the defendant, Sean Evans ("Evans"), Andre Osorio ("Osorio"), and Rigoberto Rendon ("Rendon") in Stratford, Connecticut as they delivered approximately 600 grams of heroin to undercover officers. Law enforcement officers subsequently arrested Alex Cole and Travis Wright for their participation in the drug conspiracy. Each of the defendants, except Osorio, ultimately pleaded guilty. After a jury returned a not guilty on one count of the indictment and failed to reach a verdict on the other count, Osorio subsequently

pleaded guilty to a misdemeanor offense of possession of heroin and received a sentence of probation.

On November 9, 2001, the defendant pleaded guilty and executed a cooperation agreement with the Government. Before pleading guilty, the Government interviewed the defendant pursuant to a proffer agreement. During the interview, the defendant identified the individuals involved in the conspiracy to distribute heroin and the nature of their involvement. As to Osorio, the defendant identified Osorio as joining the conspiracy on August 8, 2001 to assist in the defendant's and Evans's effort to identify a source of supply capable of providing at least one kilogram of heroin as soon as possible. The defendant also described Osorio's role in the events of August 8 and August 9, 2001.

Sometime after pleading guilty, the defendant provided a false exculpatory statement concerning Osorio to a private investigator employed on Osorio's behalf. The defendant subsequently provided the same false exculpatory statement to a second private investigator employed on Osorio's behalf.

Less than one week before the trial, which was scheduled to begin on July 15 2002, the defendant met with the Government to prepare for his trial testimony on July 10, 2002. At that meeting, the defendant initially falsely claimed that Osorio was not involved in the drug transaction. After speaking to his

lawyer, the defendant informed the Government that Osorio was involved in the drug conspiracy. Significantly, the defendant also informed the Government--for the first time--that he had provided false exculpatory statements to private investigators and that individuals had attempted to influence his testimony.

The Government closely questioned the defendant about the content of the false exculpatory statements, the circumstances under which those statements were given, the efforts to influence his testimony, the names of individuals engaged in such conduct, and the nature of the conduct. Based on the information obtained from the defendant during trial preparation sessions, the Government choose to call the defendant as a witness at trial.

During the July 10 trial preparation meeting, the defendant informed the Government that Rini had contacted him the day before and that Rini was going to contact the defendant shortly after the trial preparation meeting. At the conclusion of the pre-trial preparation meeting on July 10 and with the agreement of the defendant's counsel, the Government informed the defendant to avoid contacts with Rini and other individuals and to advise Special Agent Donahue Hibbert or the Assistant United States Attorneys assigned to the matter of any additional contacts with Rini or other individuals. The defendant agreed to do so.

The Government learned after trial, however, that the defendant did not comply with that instruction. It learned that

the defendant provided false and misleading information to an associate immediately after the pretrial preparation session. Indeed, the Government learned after trial that the defendant informed his associate that the Government threatened to withdraw his cooperation agreement if he did not lie about Osorio's participation in the drug conspiracy and that the Government possessed photographs and recordings of Osorio transporting heroin from one car to another.[1]

These claims reached Osorio's counsel, who immediately made a written request for such evidence.[2] Moreover, at trial, defense counsel cross-examined the defendant about whether the Government threatened him that it would withdraw his cooperation agreement if the defendant did not tell the version of Osorio's conduct which the Government wanted to hear. The defendant agreed that the Government did so. He then changed that testimony on redirect examination.

During direct examination, the Government attempted to defuse the defendant's provision of false exculpatory statements

---

[1] The defendant's claims appear designed to accomplish three Machiavellian objectives--first, to provide some excuse to cover the defendant's provision of information harmful to Osorio's defense; second, to convince Osorio to plead guilty so that the defendant would not be required to testify at trial; and third, to permit the defendant to receive the benefit of his cooperation agreement--a possible sentence reduction--if Osorio pleaded guilty.

[2] In response, the Government advised defense counsel that it did not possess such evidence.

5

to the private investigators by demonstrating that the false statements were orchestrated by a close associate of Osorio.  On direct examination, the defendant testified that William Rini, the individual whom allegedly solicited the defendant to provide false exculpatory statements about Osorio, merely asked the defendant to keep Osorio's name out of it as much as possible and that the defendant "understood" what he meant. (See 7/15/02 Trial Tr. at 202, 208, 210).  The defendant explained that he provided the false exculpatory statements because he "felt like [he] got Andre into this mess, maybe I could get him out."  (7/15/02 Trial Tr. at 214.) The defendant denied, however, that Rini had provided him a false exculpatory story to tell. (See 7/15/02 Trial Tr. at 208, 210.)   This assertion contradicted the defendant's statements during trial preparation sessions and, ultimately, his testimony on cross-examination and redirect examination as well as his statement during a post-trial interview.

    On cross-examination, the defendant testified that Rini orally told him to leave Osorio's name out of the incident. (See 7/15/02 Trial Tr. at 242.)  During cross-examination, the Government also learned the content of the defendant's false exculpatory statements.  The defendant admitted that he told the private investigators the following: (1) that Evans would do or say anthing to get out of this jam; (2) that Evans and Rendon were lying about everything; (3) that Osorio did not know about

6

the drug transaction; (4) that Osorio was not going to share in the profits from the sale of the drugs; (5) that the defendant did not introduce Evans to Osorio on August 8; (6) that Osorio first met Evans in the car on August 9; and (7) that Rendon was lying to avoid deportation.  (See 7/15/02 Trial Tr. at 245-248.)  The defendant also admitted under cross-examination that he created the entire false exculpatory statement to assist Osorio's defense.  (See 7/15/02 Trial Tr. at 248-250.)

On redirect examination, the defendant contradicted his earlier testimony, explaining that Rini orally suggested to him specific things to say to the investigators about Osorio's participation.  (See 7/15/02 Trial Tr. at 318-21.)

During trial, it became evident that the defendant failed to disclose accurately and completely the content of the written statements he provided to the private investigators.  It also became evident both during and after trial that the defendant had not provided complete and accurate information about the tampering incidents.

At trial, the defendant's testimony significantly undercut his own credibility as well as the credibility of other cooperating witnesses.  For example, the defendant's testimony concerning the introduction on August 8, 2001 of Osorio and Evans contradicted his earlier account of the meeting given during his proffer session, his account during trial preparation, and Evans's trial testimony.  He testified that he introduced the two

7

on August 8, but no drug-related conversations occurred at the time of the introduction, and that he then left the two together. (See 7/15/02 Trial Tr. at 155-57.)  This testimony contradicted Evans' testimony.  (See 7/15/02 Trial Tr. at 133-34.)

After trial, the Government again interviewed the defendant to permit him an opportunity to fully and truthfully explain the efforts to influence his testimony.  The defendant presented a different account of those efforts.  This time the defendant claimed that Rini had provided a written script for him to follow in providing a false exculpatory account of Osorio's involvement in the events of August 8 and August 9.  When pressed further, the defendant claimed that Rini took the script from the defendant.

The defendant's failure to inform the Government (or his lawyer) that individuals were attempting to influence his testimony, his failure until July 10, 2002 to inform the Government (or his lawyer) that he provided two private investigators false exculpatory accounts of Osorio's involvement in the events of August 8 and 9, 2001, his failure to fully and accurately describe the content of those statements or the nature of his contacts with individuals attempting to influence his testimony, his false allegations to an associate concerning Government threats to withdraw his cooperation agreement if he did not testify falsely concerning Osorio's involvement, and his shifting accounts concerning the nature of his contacts with Rini

8

constituted willful and intentional obstruction of the administration of justice in <u>United States v. Andre Osorio</u>. In short, the defendant's conduct significantly and materially compromised the Government's prosecution of Osorio. Indeed, the defendant's trial testimony, which appeared designed to deliberately limit Osorio's knowledge of and participation in the drug conspiracy, significantly undercut the defendant's credibility as well as the credibility of Evans and Rendon.

### III. CONCLUSION

In short, the defendant's repeated affirmative acts of obstruction and perjury in this matter counsel strongly against any modification in his sentence on remand. The defendant's conduct undermined the fair administration of justice and the integrity of the criminal justice process. It merits severe punishment. The Government thus respectfully requests that the District Court sentence the defendant to the same term of imprisonment of seventy months that it originally imposed.

                                        Respectfully submitted,

                                        KEVIN J. O'CONNOR
                                        UNITED STATES ATTORNEY

                                        JAMES J. FINNERTY
                                        ASSISTANT UNITED STATES ATTORNEY
                                        United States Attorney's Office
                                        915 Lafayette Boulevard
                                        Bridgeport, CT 06604
                                        Tel: (203) 696-3000
                                        Federal Bar #CT15203

**CERTIFICATE OF SERVICE**

    I hereby certify that I caused a copy of the foregoing to be forwarded via facsimile and U.S. Mail, First Class, postage prepaid, this September 12, 2002 to:

Michael P. Shea
Jennifer L. Sachs
Day, Berry & Howard LLP
City Place I
Hartford, Connecticut 06103
(Counsel for Defendant Gary Falcetta)

                                              JAMES J. FINNERTY
                                              ASSISTANT UNITED STATES ATTORNEY